IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| GPH FORT ATKINSON LLC,<br>GPH GREENFIELD LLC,<br>GPH MUSCODA LLC, and<br>SILVER SPRING ACQUISITION LLC,<br><br>    PLAINTIFFS,<br>v.<br><br>OPAL HOLDINGS LLC,<br><br>    DEFENDANT. | CASE NO.: _____ |

# COMPLAINT

Plaintiffs GPH Fort Atkinson LLC ("GPH Fort Atkinson"); GPH Greenfield LLC ("GPH Greenfield"); GPH Muscoda LLC ("GPH Muscoda"); and Silver Spring Acquisition LLC ("Silver Spring") (together, GPH Fort Atkinson, GPH Greenfield, GPH Muscoda, and Silver Spring are "Plaintiffs"), for their Complaint against Defendant Opal Holdings LLC ("Opal"), state as follows:

## NATURE OF ACTION

1. Plaintiffs bring this action to recover amounts due by Opal under its guaranty of the obligations of non-party tenants under a master lease between Plaintiffs and such tenants related to real property situated in Wisconsin. The tenants severely defaulted under the master lease, including, among other things, having failed to pay rent due to Plaintiffs, failed to pay property tax impounds for the properties subject to the master lease as required therein, failed to pay nursing home

bed assessments owed to the Wisconsin Department of Health Services as required by the master lease, and failed to make repairs and maintain the premises as required by the master lease. Opal absolutely, unconditionally, and irrevocably guaranteed to Plaintiffs the timely payment and performance by the tenants of all of their obligations under the master lease.

## PARTIES

2. GPH Fort Atkinson is a Delaware limited liability company. It is ultimately owned through a succession of single member limited liability holding companies by Drumm Merger Co., which is a Delaware corporation with a principal place of business in California. Accordingly, it is a citizen of Delaware and California for purposes of diversity.

3. GPH Greenfield is a Delaware limited liability company. It is ultimately owned through a succession of single member limited liability holding companies by Drumm Merger Co., which is a Delaware corporation with a principal place of business in California. Accordingly, it is a citizen of Delaware and California for purposes of diversity.

4. GPH Muscoda is a Delaware limited liability company. It is ultimately owned through a succession of single member limited liability holding companies by Drumm Merger Co., which is a Delaware corporation with a principal place of business in California. Accordingly, it is a citizen of Delaware and California for purposes of diversity.

5. Silver Spring is a Delaware limited liability company. It is ultimately owned through a succession of single member limited liability holding companies by Drumm Merger Co., which is a Delaware corporation with a principal place of business in California. Accordingly, it is a citizen of Delaware and California for purposes of diversity.

6. Opal is a New Jersey limited liability company. Its members are Shaya (a/k/a Avrohom) Prager and Shulamit Prager. Both Shaya Prager and Shulamit Prager reside in and are citizens of the state of New Jersey. Therefore, Opal is a citizen of New Jersey for purposes of diversity.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship of the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Opal because the claim set forth herein arises out of Opal's contacts with Wisconsin that give rise to the claim, specifically including Opal's guaranty of a lease of properties located in this state. Further, Opal consented to personal jurisdiction in this Court in the guaranty.

9. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

# FACTUAL ALLEGATIONS

## *The Master Lease and the Guaranty*

10. Plaintiffs are the owners of real estate and other property (the "Premises") of four skilled nursing facilities located in Wisconsin (the "Facilities").

11. Plaintiffs and non-parties Bedrock HCS at Atkinson LLC ("Bedrock Atkinson"); Bedrock HCS at Glendale LLC ("Bedrock Glendale"); Bedrock HCS at Greendale LLC ("Bedrock Greendale"); and Bedrock HCS at Riverdale LLC ("Bedrock Riverdale") (together, Bedrock Atkinson, Bedrock Glendale, Bedrock Greendale, and Bedrock Riverdale are "Tenants") were parties to a Master Lease dated September 5, 2019 (as amended or modified from time to time, the "Master Lease").[1]

12. Pursuant to the Master Lease, Plaintiffs, as landlords, leased the Premises to Tenants, as tenants, on a triple net basis. In turn, Tenants were the licensed operators of the Facilities.

13. Opal is the beneficial owner, directly or indirectly, of voting and economic interests in Tenants.

14. By a Guaranty of Master Lease dated September 5, 2019 (the "Guaranty"), Opal agreed to "absolutely, unconditionally and irrevocably" guarantee (i) the full and prompt payment by Tenants of all amounts due under the Master Lease, and (ii) the full, complete, and timely performance by Tenants of all covenants,

---

[1] Additionally, certain non-party affiliates of Plaintiffs and Tenants previously were parties to the Master Lease with respect to other real estate owned by such affiliates of Plaintiffs, but such non-party affiliates of Plaintiffs and Tenants were removed from the Master Lease pursuant to a Lease Cancellation and Termination Agreement dated as of December 30, 2022. The Master Lease and the amendments thereto contain commercially sensitive information and thus have not been attached to the Complaint. They will be provided to the Court upon request.

4

indemnities, and obligations they had under the Master Lease. A copy of the Guaranty is attached hereto as **Exhibit 1**.

15. Tenants agreed in the Master Lease to pay "Base Rent" to Plaintiffs on a monthly basis. Master Lease § 2.1.

16. Tenants further agreed in the Master Lease to pay all other costs and charges relating to the Facilities, including but not limited to taxes (including property taxes), assessments, utilities, insurance, and other operational costs. Master Lease §§ 4.1, 4.2, 4.3, and 4.4.

17. Tenants agreed in the Master Lease to operate each Facility "in a manner consistent with a high quality healthcare facility" and in compliance with legal requirements, licensure and certification requirements, and third party payor program requirements, and to refrain from any act or omission that would result in, among other things, a suspension of any Facilities' right to admit residents or receive reimbursement from a third party payor program. Master Lease §§ 6.3, 6.4.1, 6.4.2, and 6.4.3.

18. Additionally, Tenants agreed to keep and maintain the Premises in good appearance, repair, and condition. They also agreed to promptly make all repairs (interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen) required to keep the Premises in good and lawful order and condition, in compliance with all legal and insurance requirements, and in a high quality operating and structural condition for use as skilled nursing facilities. Master Lease § 7.1.

19. Tenants agreed to provide financial reporting to Plaintiffs as set forth in the Master Lease. Master Lease § 6.7 and Exh. D thereto.

20. Pursuant to the Master Lease, any failure by Tenants to pay amounts due under the Master Lease within three calendar days of the date such payments were due was an "Event of Default" thereunder. Master Lease § 13.1.1.

21. Any failure by Tenants to provide financial reporting to Plaintiffs within ten days of demand by Plaintiffs also constitutes an Event of Default under the Master Lease. Master Lease § 13.1.9.

22. Tenants also agreed that any failure by them to observe obligations under the Master Lease (other than monetary obligations or other specified obligations that are not subject to cure rights or are subject to different cure rights) would constitute an Event of Default if not cured within 30 days of notice by Plaintiffs. *See* Master Lease § 13.1.12

23. Tenants agreed in the Master Lease that any amounts due to Plaintiffs that are not paid within five days of the due date would be subject to a late charge of 5%, and any such amounts not paid within ten days of the due date would accrue interest at an agreed upon rate, compounded monthly, from the due date until the payment of the amounts owed. Master Lease § 2.4.

24. Opal agreed in the Guaranty to maintain its net worth, EBITDA, and debt service coverage ratio in excess of the minimums set forth in the Guaranty and to provide Plaintiffs with financial reports and certifications as set forth in the Guaranty. Guaranty §§ 9.1, 10.

6

25. Opal agreed in the Guaranty that it would pay all "costs of collection or enforcement incurred by" Plaintiffs in exercising remedies under the Master Lease or the Guaranty, and further agreed that in any action to enforce or interpret the Guaranty and its terms, the prevailing party in such action would be entitled to recover its attorneys' fees and costs and expenses. Guaranty § 11.2.

*Tenants Breach the Master Lease and Opal Breaches the Guaranty*

26. Tenants failed to pay substantial amounts of Base Rent when due under the Master Lease. Through December 2024, Tenants failed to pay Plaintiffs Base Rent in the principal amount of $227,311.18, excluding all interest and late fees.

27. Tenants failed to pay substantial amounts of property tax impounds relating to the Premises. Tenants owe principal amounts in excess of $323,000 for property tax impounds relating to the Premises, excluding all interest and late fees.

28. Tenants failed to pay substantial amounts of monthly licensed bed assessments due to the Wisconsin Department of Health Services. Upon information and belief, Tenants owe the Wisconsin Department of Health Services in excess of $3 million.

29. On September 3, 2024, Plaintiffs delivered a notice of maintenance and repairs required to be made to the Premises pursuant to Section 7.1 of the Master Lease, but Tenants failed and refused to make such repairs and otherwise to maintain and repair the Premises as required by the Master Lease.

30. Tenants have failed to operate the Facilities "in a manner consistent with a high quality healthcare facility" and in compliance with all legal requirements, licensure and authorization requirements, and third party payor requirements.

31. Among other things, each of the Facilities was under either an active Denial of Payment for New Admissions ("DPNA") or a threatened DPNA in the third quarter of 2024. A DPNA is an enforcement remedy used by the Centers for Medicare and Medicaid Services ("CMS") when a skilled nursing facility is not in compliance with the requirements for participation in Medicare, and the DPNA acts as a suspension of such facility's right to receive reimbursement for the admission of new Medicare patients.

32. Further, three of the four Facilities are currently on the Special Focus Facility ("SFF") candidate list for Wisconsin maintained by CMS. Facilities on the SFF candidate list are those which have a history of serious quality issues as demonstrated by repeated deficiencies when surveyed by state surveyors to determine compliance with CMS standards for patient care and safety. The facilities with the worst deficiencies over the previous three survey cycles/complaint years (based on number and scope and severity level) are placed on the SFF candidate list, and from there the applicable state agency determines which facilities to designate as SFFs. Once designated as SFFs, a facility undergoes intensive survey activities from the state agencies and must either graduate off the SFF list or be terminated from the Medicare and Medicaid programs.

33. Additionally, Tenants have failed and refused to provide Plaintiffs the financial information required by the Master Lease, even after demand from Plaintiffs for such information.

34. Tenants have further failed and refused to confirm details about maintenance of the insurance coverage required by the Master Lease.

35. Notwithstanding Opal's obligations under the Guaranty, Opal has failed and refused to satisfy the obligations of Tenants under the Master Lease which Tenants have failed to pay or perform in a timely manner.

36. Further, Opal itself has failed and refused to provide the financial information and certifications it agreed to provide pursuant to the Guaranty, raising concerns by Plaintiffs that Opal has failed to meet the financial covenants in the Guaranty and may have violated the terms of the Guaranty prohibiting distributions to affiliates of Opal and other financial maneuvers after the occurrence of an Event of Default under the Master Lease. *See* Guaranty §§ 5.1 and 5.2.

37. On December 23, 2024, Plaintiffs issued a notice terminating the Master Lease due to various Events of Default of Tenants. Although not required by law or the Guaranty, Plaintiffs also sent such notice of the Events of Default and termination of the Master Lease to Opal, as guarantor.

38. Tenants have failed to cooperate in the transition of operations of the Facilities as required by the Master Lease.

39. On December 27, 2024, Plaintiffs initiated an action against Tenants in Milwaukee County Circuit Court (the "Receivership Action") seeking appointment of

9

Case 2:25-cv-00129-WCG   Filed 01/24/25   Page 9 of 12   Document 1

a receiver pursuant to Wisconsin law. Pursuant to the Master Lease, Tenants irrevocably consented to appointment of a receiver upon the occurrence of an Event of Default and they are liable for all fees and expenses incurred by Plaintiffs in connection with any appointment of a receiver. Master Lease § 13.2.2.

40. Plaintiffs have suffered damages due to Tenants' and Opal's defaults as set forth above, plus late fees, interest, legal fees, costs, and expenses associated with this action and the Receivership Action.

## COUNT – BREACH OF GUARANTY

41. Plaintiffs incorporate by reference the allegations set forth above.

42. The Master Lease is a valid and enforceable contract.

43. Plaintiffs fulfilled their obligations under the Master Lease and satisfied all conditions precedent to Tenants' obligations thereunder.

44. Without legal justification or excuse, Tenants materially breached the Master Lease by failing to perform and pay their obligations thereunder.

45. The Guaranty is a valid and enforceable contract in which Opal guaranteed to Plaintiffs Tenants' timely payment and performance of all obligations under the Master Lease.

46. Plaintiffs satisfied all conditions precedent to Opal's obligations under the Guaranty.

47. Opal materially breached the Guaranty by failing to perform its obligations thereunder.

10

48. As a direct and proximate result of Opal's breaches of the Guaranty, Plaintiffs have suffered and will continue to suffer damages.

49. Plaintiffs have incurred attorneys' fees and other costs and expenses in filing this action and the Receivership Action, all of which are the responsibility of Opal. Plaintiffs are likely to incur substantial additional attorneys' fees, costs, and expenses as this case and the Receivership Action proceed, all of which shall also be the responsibility of Opal pursuant to the Guaranty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the Court to enter judgment in their favor against Opal as follows:

- A. An award of compensatory damages in an amount to be proven at trial;
- B. Pre-judgment and post-judgment interest;
- C. Plaintiffs' costs, expenses, and outside attorneys' fees associated with this action, the Receivership Action, and the enforcement of remedies under the Master Lease and the Guaranty; and
- D. All other relief to which Plaintiffs may be entitled.

Dated: January 24, 2025

Respectfully submitted,

*s/ Christa D. Wittenberg*
Christa D. Wittenberg, WI State Bar No. 1096703
Jessica K. Haskell, WI State Bar No. 1113326
**O'Neil, Cannon, Hollman, DeJong & Laing S.C.**
111 E. Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202
Phone: (414) 276-5000
Email: christa.wittenberg@wilaw.com
jessica.haskell@wilaw.com

*Attorneys for Plaintiffs*