UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GPH FORT ATKINSON LLC, et al.,

        Plaintiffs,

        v.                                    Case No. 25-C-129

OPAL HOLDINGS LLC,

        Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY PROCEEDINGS

On January 24, 2025, Plaintiffs GPH Fort Atkinson LLC, GPH Greenfield LLC, GPH Muscoda LLC, and Silver Spring Acquisition LLC filed this action under the court's diversity jurisdiction, 28 U.S.C. § 1332, asserting a claim of breach of guaranty against Defendant Opal Holdings LLC. In particular, Plaintiffs seek to recover amounts allegedly owed by Defendant as the unconditional guarantor of a master lease entered between Plaintiffs, as landlords, and four non-party tenants. They also allege that Defendant breached the guaranty by failing to maintain certain financial minimal requirements and refusing to provide financial reports and certifications to Plaintiffs. Prior to filing this action, Plaintiffs commenced an action against the tenants in Milwaukee County Circuit Court, Case No. 2024CV10446, seeking the appointment of a receiver pursuant to Chapter 128 of the Wisconsin Statutes and asserting that the tenants breached the master lease.

Presently before the court is Defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to stay proceedings. Defendant argues that the court should abstain from exercising jurisdiction under the doctrine articulated in *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800 (1976), and either dismiss the case without prejudice or stay proceedings until the state court litigation has reached a final resolution. Upon consideration of the briefs filed by the parties and the arguments offered at the hearing before the court on June 17, 2025, the court denied Defendant's motion. This decision will set forth the reasons for the court's denial.

## BACKGROUND

### A. Allegations Contained in the Complaint

Plaintiffs are the owners of real estate and other property for four skilled nursing facilities located in Wisconsin. On September 5, 2019, Plaintiffs entered into a master lease with Bedrock HCS at Atkinson LLC, Bedrock HCS at Glendale LLC, Bedrock HCS at Greendale LLC, and Bedrock HCS at Riverdale LLC (together referred to as "the tenants"). Pursuant to the master lease, Plaintiffs, as landlords, leased the premises to the tenants, the licensed operators of the four facilities, on a triple net basis.

The master lease provided that the tenants would pay "base rent" to Plaintiffs on a monthly basis and pay all other costs and charges relating to the facilities, including taxes, assessments, utilities, insurance, and operational costs. Compl. ¶¶ 15–16, Dkt. No. 1. It also required that the tenants provide certain financial reporting to Plaintiffs. Under the master lease, the tenants agreed to operate each facility "in a manner consistent with a high quality healthcare facility;" operate the facilities in compliance with all legal, licensure and certification, and third-party payor program requirements; and refrain from any act or omission that would result in a suspension of any facility's right to admit residents or receive reimbursement from a third-party payor program. *Id.* ¶ 17. In addition, the tenants agreed to keep and maintain the premises in good appearance, repair, and condition.

Defendant is the beneficial owner of voting and economic interests in the tenants. By a guaranty of master lease dated September 5, 2019, Defendant agreed to "absolutely, unconditionally and irrevocably" guarantee (1) the full and prompt payment by the tenants of all amounts due under the master lease and (2) the full, complete, and timely performance by the tenants of all covenants, indemnities, and obligations they had under the master lease. *Id.* ¶ 14. Defendant also agreed to maintain its net worth, earnings before interest, taxes, depreciation, and amortization (EBITDA), and debt service coverage ratio in excess of the minimums set forth in the guaranty and to provide Plaintiffs with certain financial reports and certifications. It agreed to pay all costs of collection or enforcement incurred by Plaintiffs in exercising remedies under the master lease or guaranty.

Plaintiffs allege that, through December 2024, the tenants failed to pay Plaintiffs base rent in the principal amount of $227,311.18, excluding all interest and late fees. The tenants also owe principal amounts in excess of $323,000 for property tax impounds relating to the premises and owe the Wisconsin Department of Health Services in excess of $3 million related to monthly licensed bed assessments. Plaintiffs assert that the tenants have refused to provide them with certain financial information and to confirm details about their maintenance of insurance coverage as required by the master lease.

On September 3, 2024, Plaintiffs delivered to the tenants a notice of maintenance, listing the repairs required to be made to the premises by the tenants. The tenants refused to make such repairs and otherwise failed to maintain and repair the premises as required by the master lease. In addition, the tenants failed to operate the facilities in a manner consistent with a high-quality healthcare facility and in compliance with all legal, licensure and authorization, and third-party payor requirements. In the third quarter of 2024, each of the facilities was under an active "denial

3

Case 2:25-cv-00129-WCG   Filed 06/17/25   Page 3 of 8   Document 21

of payment for new admissions"[1] (DPNA) or a threatened DPNA. Three of the four facilities are currently on the Wisconsin Special Focus Facility candidate list maintained by the Centers for Medicare and Medicaid Services.

Notwithstanding Defendant's obligations under the guaranty, Plaintiffs assert that Defendant has refused to satisfy the obligations of the tenants under the master lease. Defendant has also refused to provide Plaintiffs with certain financial information and certifications as required by the guaranty. Plaintiffs are concerned that Defendant has failed to meet the financial covenants in the guaranty. They allege that Defendant may have violated the terms of the guaranty that prohibit distributions to Defendant's affiliates and other financial maneuvers.

On December 23, 2024, Plaintiffs issued a notice to the tenants terminating the master lease due to various events of default by the tenants. They also sent notice of the events of default and termination of the master lease to Defendant, as the guarantor. Plaintiffs assert that Defendant has materially breached the guaranty and that they have suffered damages as a result of the breach.

**B. Procedural Background**

On December 27, 2024, Plaintiffs initiated an action against the tenants in Milwaukee County Circuit Court, Case No. 2024CV10446, seeking the appointment of a receiver pursuant to Chapter 128 of the Wisconsin Statutes and asserting that the tenants breached the master lease. A receivership, as opposed to eviction or similar relief, was sought in the state court proceeding in order to continue the operation of the facilities for the benefit of the patients. Plaintiffs then filed this action against Defendant on January 24, 2025. Defendant was served with the summons and

---

[1] A DPNA is an enforcement remedy used by the Centers for Medicare and Medicaid Services when a skilled nursing facility is not in compliance with the requirements for participation in Medicare. The DPNA acts as a suspension of a facility's right to receive reimbursement for the admission of new Medicare patients.

complaint filed in this action on February 7, 2025. On February 11, 2025, Defendant filed a motion to intervene in the state court proceeding, which the state court granted on February 17, 2025.

## LEGAL STANDARD

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A jurisdictional challenge based on the *Colorado River* abstention doctrine is properly considered under Rule 12(b)(1). *See Berrada Props. Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 749 n.1 (E.D. Wis. 2022) ("[W]hen a party asks the Court to decline jurisdiction pursuant to an abstention ground, its motion 'fits more comfortably under Rule 12(b)(1)' than Rule 12(b)(6)." (quoting *Bolton v. Bryant*, 71 F. Supp. 3d 802, 809 n.2 (N.D. Ill. 2014))). When reviewing a Rule 12(b)(1) motion, "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (citation omitted). The court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (internal quotation marks and citation omitted).

## ANALYSIS

Defendant asserts that the court should abstain from hearing this case under the *Colorado River* abstention doctrine. "Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 646 (7th Cir. 2021) (cleaned up). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Under the *Colorado River* abstention doctrine, "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway," but

only with the clearest of justifications. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

To determine whether a stay under *Colorado River* is warranted, the court applies a two-part test. First, the court asks whether the state and federal actions are parallel. *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020) (citation omitted). "If so, the second question is whether the necessary exceptional circumstances exist to support a stay or dismissal." *Id.* (citation omitted). The Seventh Circuit has developed a list of ten common factors to consider in making this determination:

> 1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property; 2. The inconvenience of the federal forum; 3. The desirability of consolidating litigation in one place (put otherwise, the value in avoiding "piecemeal" or broken-up proceedings); 4. The order in which jurisdiction was obtained in the concurrent fora; 5. The source of governing law—federal or state; 6. The adequacy of the state-court action to protect the federal plaintiff's rights; 7. The relative progress of the state and federal proceedings; 8. The presence or absence of concurrent jurisdiction; 9. The availability of removal; and 10. Whether the federal action is vexatious or contrived.

*Id.* "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Freed*, 756 F.3d at 1018. With these principles in mind, the court turns to the first inquiry of the two-part test.

Two suits are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 1019 (internal quotation marks and citation omitted). The presence of additional parties or issues in either the state or federal proceedings does not necessarily preclude a finding that the proceedings are parallel; "formal symmetry" is not required. *Tyrer v. City of South Beloit, Illinois*, 456 F.3d 744, 752–53 (7th Cir. 2006). But "the more the additional claims depend on different evidence and the more the additional parties have differing interests, the less a stay will facilitate *Colorado River*'s purpose." *Eagle Marine Indus., Inc. v. Conagra Foods, Inc.*, No. 06-cv-515, 2006 WL 3253327, at *6 (S.D. Ill. Nov. 9, 2006). For

6

federal and state proceedings to be parallel, "there must be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed*, 756 F.3d at 1018 (internal quotation marks and citation omitted). "[A]ny doubt regarding the parallel nature of the foreign suit should be resolved in favor of exercising jurisdiction." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001).

Defendant asserts that the cases are parallel because the state and federal proceedings involve the same operative facts and substantially the same parties. There is certainly factual overlap between the proceedings. Plaintiffs allege in both cases that the tenants breached the master lease by failing to pay base rent, real estate taxes, and licensed bed assessments and by failing to make necessary repairs to the premises. The tenants' and Defendant's liability in each action is predicated on the tenants' default under the master lease—Plaintiffs' allegations form the basis of the breach of contract claim against the tenants in the state court action and the breach of guaranty claim against Defendant in this action. The relevant facts and evidence with respect to this issue are the same.

But Plaintiffs' claim in this case involves alleged breaches of the guaranty beyond Defendant's refusal to satisfy the tenants' obligations under the master lease. Plaintiffs also allege that Defendant breached the guaranty by failing to maintain certain financial minimal requirements and refusing to provide financial reports and certifications to Plaintiffs. As it stands now, the state court will not be called to decide the issues related to this aspect of Plaintiffs' breach of guaranty claim against Defendant. Even if the state court were to find that the tenants did not breach the master lease, such a ruling would not foreclose all of the relief Plaintiffs seek against Defendant here. In other words, this court will still be called to decide whether Defendant breached the guaranty, regardless of the outcome of the state court action.

7

Case 2:25-cv-00129-WCG    Filed 06/17/25    Page 7 of 8    Document 21

The court recognizes the potential risk of piecemeal proceedings due to the overlap of issues in the state and federal actions. However, the critical question in the parallel-proceedings analysis is whether the state litigation will dispose of all claims presented in the federal case. *See Freed*, 756 F.3d at 1018. Here, the answer to that question is "no." Moreover, the clear intent of Plaintiffs' contract with Defendant is to allow Plaintiffs to pursue remedies against Defendant before waiting for the result of a separate proceeding against the tenants. "This purpose would be thwarted if this court were to grant [Defendant] a stay." *JLM Fin. Invs. 4 LLC v. Aktipis*, No. 11 C 2561, 2012 WL 74856, at *2 (N.D. Ill. Jan. 9, 2012). Accordingly, the court finds that the cases are not parallel. This conclusion, along with the court's "virtually unflagging obligation" to exercise the jurisdiction given to it, *Loughran*, 2 F.4th at 646, require that the court deny Defendant's motion to dismiss or, alternatively, to stay proceedings.

## CONCLUSION

For these reasons, Defendant's motion to dismiss or, alternatively, to stay proceedings (Dkt. No. 10) is **DENIED**. The parties shall consult with one another and submit a proposed case management schedule within thirty days of this order. In the event they are unable to reach agreement, the Clerk is directed to set the matter on the court's calendar for a telephonic scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 17th day of June, 2025.

William C. Griesbach
United States District Judge